IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES TALBERT, | : |
| | : |
| Plaintiff, | : |
| | : CIVIL ACTION |
| v. | : |
| | : |
| | : |
| MICHELE FARRELL, et al., | : NO. 14-6094 |
| | : |
| Defendants. | : |

## MEMORANDUM

**Stengel, J.**                                                                                                                                                           **July 7, 2016**

*Pro se* plaintiff, Charles Talbert, brings an action under 42 U.S.C. § 1983 alleging that Michele Farrell, Mr. Dejesus, Mr. K. Paone, Ms. Ryan, Mr. M. Robinson, Mr. T. Holmes-Irving and Mr. Rosa violated his First and Eighth Amendment right. According to Mr. Talbert, the defendants unlawfully confiscated his religious headgear in violation of his First Amendment right to religious freedom and subjected him to cruel and unusual punishment in violation of the Eighth Amendment when they pepper sprayed him on three different occasions. For the reasons discussed below, I am denying Mr. Talbert's motion for summary judgment.

### I.     BACKGROUND

On November 13, 2014, Charles Talbert filed a *pro se* complaint alleging a violation of 42 U.S.C. § 1983. Doc. No. 5. When the complaint was filed, Mr. Talbert

was a pretrial detainee at the Curran-Fromhold Correctional Facility ("CFCF") in Philadelphia, Pennsylvania. Pl.'s Compl. ¶ 1.

### A. Request for a Second Meal Tray

On the evening of August 3, 2014, Defendant K. Paone came to Mr. Talbert's cell to bring him dinner. Id. at ¶ 8. Mr. Talbert claims that a medical diet order requires him to receive two trays of food for dinner due to his ileostomy and Defendant Paone only brought Mr. Talbert one tray of food. Id. Mr. Talbert requested his second tray of food, but Defendant Paone ignored Mr. Talbert and kept pushing the food cart away from Mr. Talbert's cell. Id. at ¶ 9. Mr. Talbert continued to request a second food tray from Defendant Paone's partner and asked to see a supervisor. Id. at ¶ 10. Defendant Paone then came back to Mr. Talbert's cell grabbed his arms by the wrist and pepper sprayed Mr. Talbert in the face causing his skin to burn and symptoms of his asthma to flare up. Id. at ¶¶ 10-11.

### B. Trip to Medical Triage

After being pepper sprayed in his cell, Defendant DeJesus then ordered Mr. Talbert to be handcuffed and taken to medical triage for decontamination. Id. at ¶ 12. On the walk to the medical triage unit, Mr. Talbert states he was coughing up pepper spray when without warning Defendant Paone grabbed the back of Mr. Talbert's jumpsuit, threw him against a concrete wall and pepper sprayed Mr. Talbert in the right ear. Id. at ¶ 14. Defendant Paone tripped Mr. Talbert onto his stomach which caused Mr. Talbert

lower back injuries. Id. After this incident, Defendant DeJesus took pictures of Mr. Talbert's injuries and the following morning, Mr. Talbert was sent to Frankford-Torresdale Aria Hospital to be seen for these injuries. Id. at ¶ 15.

### C. Strip Search

On August 20, 2014, Mr. Talbert was returning from a court appearance when he was strip searched in front of officers. Id. at ¶ 19. The defendants found a grey kufi on Mr. Talbert's person. Id. Defendant Ryan told Mr. Talbert to give her his kufi and Mr. Talbert requested to see a lieutenant or captain in regard to handing over his kufi. Id. at ¶¶ 20-21. After denying his request, Defendant Ryan ordered Defendant Rosa and Defendant T. Holmes-Irving to strip search Mr. Talbert again. Id. at ¶ 22. Defendant Ryan then called Defendant DeJesus and told him to strip search Mr. Talbert a third time before going to his housing unit. Id. at ¶ 23. Mr. Talbert was strip searched a third time in a video-recording multipurpose room. Id. at ¶ 24. During the third strip search, Mr. Talbert was once again pepper sprayed. Id. at ¶ 26. Mr. Talbert requested to be strip searched out of the camera's view, but Defendant DeJesus stated to Mr. Talbert, "your gonna show me your ass and balls or im a have my officer spray you again [sic]." Id. at ¶ 28. Mr. Talbert told Defendant DeJesus that he wanted to see his supervisor and in response, Defendant DeJesus ordered Defendant Robinson to pepper spray Mr. Talbert again. Id. at ¶ 29. Defendant DeJesus then confiscated Mr. Talbert's kufi. Id. at ¶ 30. Following this incident, Mr. Talbert went to the Mental Health Social Worker and reported that Defendant Dejesus had sexually harassed him. Id. at ¶ 31.

## II.     LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is "material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.

A party seeking summary judgment initially bears responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing relevant portions of the record, including depositions, documents, affidavits, or declarations, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c).  Summary judgment is therefore appropriate when the non-moving party fails to rebut the moving party's argument that there is no genuine issue of fact by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

Under Rule 56 of the Federal Rules of Civil Procedure, the Court must draw "all justifiable inferences" in favor of the non-moving party.  Anderson, 477 U.S. at 255.  The

4

Court must decide "not whether. . . .the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Id. at 252.

**III. DISCUSSION**

Mr. Talbert states that he is entitled to judgment as a matter of law on his § 1983 claim alleging that the defendants violated his First and Eighth Amendment rights. Mr. Talbert's First Amendment claim arises from the defendants' confiscation of his kufi after a bodily search and his Eighth Amendment claim arises from three different occasions on which prison officials pepper sprayed him. The defendants oppose summary judgment on the grounds that a genuine issue of material fact exists as to whether a legitimate security or disciplinary need justified the defendants' use of pepper spray against Mr. Talbert.

Under 42 U.S.C. § 1983, a private party may recover in an action against any person acting under the color of state law who deprives the party of his or her constitutional rights. The relevant text of § 1983 provides, in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or any other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . . .

Section 1983 does not by itself confer substantive rights, but rather, provides a remedy for redress when a constitutionally protected right has been violated. Oklahoma

5

City v. Tuttle, 471 U.S. 808, 816 (1985)(citing Baker v. McCollan, 443 U.S. 137, 140, 144 n.3 (1979)). Thus, in order to bring a successful claim for relief under § 1983, "a plaintiff must demonstrate the defendant, acting under color of law, deprived him or her of a right secured by the Constitution or the laws of the United States." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).

### A. Eighth Amendment Claims

Mr. Talbert moves for summary judgment on his § 1983 claim alleging that the defendants used excessive force when they pepper sprayed him after he asked for a second tray of food, when they pepper sprayed him on the way to the medical triage unit and when they pepper sprayed him after he refused to remove his clothes for a strip search. These claims are subject to evaluation under the Eighth Amendment.[1]

---

[1]   Mr. Talbert alleges that at the time of these violations he was a pretrial detainee. In Bell v. Wolfish, 441 U.S. 520 (1979), the Supreme Court distinguished between excessive force claims brought by pretrial detainees and excessive force claims brought by sentenced prisoners. Bell, 441 U.S. at 535 n.16. Bell held that excessive force claims brought by pretrial detainees were subject to the protections of the Due Process Clause and excessive force claims brought by sentenced prisoners were grounded in the Eighth Amendment's protections. Id. The Third Circuit clarified that "[t]he distinction is significant because, whereas the Due Process Clause prohibits any form of punishment, the Eighth Amendment only prohibits punishment that is 'cruel and unusual,' namely, punishment imposed 'maliciously and sadistically to cause harm.'" Jackson v. Phelps, 575 F. App'x 79, 82 (3d Cir. 2014).

Upon consideration of the holding in Bell, the Third Circuit determined that Bell's distinction between pretrial detainees and sentenced prisoners was not logical or practical in the context of containing prison disturbances. Fuentes v. Wagner, 206 F.3d 335, 347-48 (3d Cir. 2000). The Fuentes court adopted the reasoning of Valencia v. Wiggins, 981 F.2d 1440 (5th Cir. 1993) and explained that in Valencia the court held:

> In Bell, the Court stated that the government must be able to take steps to maintain security and that "[r]estraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment . . . ." Bell further noted that there is no reason to distinguish between pretrial detainees and convicted inmates in reviewing challenged security practices because there is no basis to conclude that pretrial detainees pose any lesser security risk than convicted inmates.
>
> For these reasons, we conclude that excessive use of force claims by pretrial detainees should not be analyzed under Bell's conditions of confinement standard. Instead, we are guided by the standard announced in Whitley and Hudson. While these cases specifically addressed claims of excessive use of

6

The Eighth Amendment is "the primary source for protection of an inmate who has been convicted and is serving his sentence and claims that officials used excessive and unjustified force."  Picozzi v. Haulderman, No. 08-0926, 2011 WL 830331, *4 (M.D. Pa. Mar. 3, 2011).  When evaluating a § 1983 excessive force claim made by a prisoner against prison guards, the touchstone is whether the force was applied in a "good-faith effort to maintain or restore discipline, or maliciously and sadistically" to cause harm.  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).  Relevant factors in that determination include "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by prison officials; and (5) any efforts made to temper the severity of a forceful response."  Passmore v. Ianello, 528 F. App'x 144, 147 (3d Cir. 2013).

---

<blockquote>

force brought by convicted prisoners, it is impractical to draw a line between convicted prisoners and pretrial detainees for the purpose of maintaining jail security.  Moreover, the Court indicated in Hudson that many of its concerns in Whitley were not limited to Eighth Amendment claims but "arise whenever guards use force to keep order." It further observed that claims based on excessive force and claims based on conditions of confinement are different in kind.

Therefore, when a court is called upon to examine the amount of force used on a pretrial detainee for the purpose of institutional security, the appropriate analysis is that announced in Whitley and Hudson:  whether the measure taken inflicted unnecessary and wanton pain and suffering depends on "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm."

</blockquote>

Valencia, 981 F.2d at 1446 (internal citations omitted).  Ultimately, the Fuentes court held that the "Eighth Amendment cruel and unusual punishments standard found in Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) and Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), apply to a pretrial detainee's excessive force claim *arising in the context of a prison disturbance*."  Fuentes, 206 F.3d at 347 (emphasis in original).  Mr. Talbert's excessive claims arise in the context of a prison disturbance and therefore, his claims will be analyzed under the Eighth Amendment's cruel and unusual standard.

In determining whether the use of pepper spray constitutes excessive force, the Third Circuit recently stated as follows:

> As a result [of consideration of the above factors], use of tear gas is not a "per se violation of the Eighth Amendment . . . ." Soto v. Dickey, 744 F.2d 1260, 1270 (7th Cir. 1984). Rather, "[t]he use of mace, tear gas or other chemical agent of the like nature when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners does not constitute cruel and inhuman punishment." Soto v. Dickey, 744 F.2d 1260, 1270 (7th Cir. 1984). See also Michenfelder v. Sumner, 860 F.2d 328, 336 (9th Cir. 1988)(policy allowing use of taser guns on inmate who refused to submit to a strip search does not constitute cruel and unusual punishment); Spain v. Procunier, 600 F.2d 189, 195 (9th Cir. 1979)(the use of tear gas "in small amount may be a necessary prison technique if a prisoner refuses after adequate warning to move from a cell or upon other provocation presenting a reasonable possibility that slight force will be required."); Clemmons v. Greggs, 509 F.2d 1338, 1340 (5th Cir. 1975)(the use of tear gas when reasonably necessary to subdue recalcitrant prisoners does not violate the Eighth Amendment).

Passmore, 528 F. App'x at 147-48.

Mr. Talbert is not entitled to summary judgment on any of the claims that he sets forth. With his motion for summary judgment, Mr. Talbert produced several inmate misconduct reports which provide substantially different accounts of the pepper spraying incidents than Mr. Talbert's narration. Viewing the facts in the light most favorable to the non-moving party, I find that the record clearly demonstrates a genuine issue of material fact as to whether the defendants' use of pepper spray violated Mr. Talbert's Eighth Amendment right or was reasonably necessary to maintain or restore discipline.

Mr. Talbert states that he was first pepper sprayed in response to his valid request for a second food tray; however, the inmate misconduct report notes that Mr. Talbert was pepper sprayed because he refused to allow his cell port to be closed thereby posing a threat to discipline and security. The inmate misconduct report states that once Mr. Talbert received his meal tray, he stuck both of arms out and refused to allow the cell port to be secured. Pl.'s Mot. Summ. J. 7. Defendant Paone ordered Mr. Talbert several times to remove his arms from the cell and warned Mr. Talbert that if he did not comply he would be pepper sprayed. Id. In response, Mr. Talbert stated, "[f]*** it pussies! Spray me then!" Id. Defendant Paone pepper sprayed him, Mr. Talbert removed his arms from the cell port and Defendant DeJesus was notified regarding the incident. Id.

Mr. Talbert alleges that he was violently accosted by Defendant Paone and pepper sprayed a second time without provocation on the walk to the medical triage unit. The inmate misconduct report states that on the walk to the medical triage unit, Mr. Talbert became combative and began to spit into the air. Id. at 11. When asked to stop, Mr. Talbert refused and Defendant DeJesus ordered Defendant Paone to pepper spray Mr. Talbert again which Defendant Paone did. Id.

According to Mr. Talbert, the defendants pepper sprayed him a third time because he had requested that he not be strip searched in front of a camera and because he had requested to speak to a supervisor. The inmate misconduct report states that when asked to remove his clothes, Mr. Talbert became belligerent and refused to comply. Id. at 15.

9

Because of this behavior, Defendant DeJesus ordered Defendant Robinson to pepper spray Mr. Talbert.  Id.

Mr. Talbert alleges that the use of pepper spray on these three incidents constitutes cruel and unusual punishment in violation of his Eighth Amendment right.  Mr. Talbert essentially claims that the defendants used pepper spray maliciously and sadistically to cause him harm.  As Mr. Talbert argues, the defendants had no legitimate security or disciplinary justification for their use of pepper spray against Mr. Talbert.   Certainly, if pepper spray is used in this manner, there is a real danger that the defendants' conduct violated Mr. Talbert's Eighth Amendment rights.

However, viewing the facts in the light most favorable to the defendants, the defendants used pepper spray against Mr. Talbert in a good faith effort to preserve security and discipline after Mr. Talbert displayed combative and aggressive behavior towards prison officials.  The Third Circuit in Passmore dictated that the use of pepper spray does not constitute cruel and unusual punishment where "reasonably necessary to . . . subdue recalcitrant prisoners." Passmore, 528 F. App'x at 147.  Accordingly, Mr. Talbert's Eighth Amendment rights have not been violated if the defendants' use of pepper spray was reasonably necessary to subdue Mr. Talbert after he displayed threatening behavior.  Given the disparities between Mr. Talbert's description of events and the inmate misconduct reports, genuine issues of material fact exist and I cannot grant summary judgment in favor of Mr. Talbert.  Rather, a jury must weigh the evidence and determine whether the defendants' use of pepper spray was a malicious and sadistic

attempt to cause Mr. Talbert harm or was reasonably necessary to maintain discipline and security.

### B. First Amendment Claim

Mr. Talbert also claims that the prison officials violated his First Amendment right to religious freedom when they confiscated his kufi after he returned from a court hearing and was strip searched. In Pell v. Procunier, 417 U.S. 817, 822 (1974), the Supreme Court recognized that:

> [L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. In the First Amendment context a corollary of this principle is that a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system .
> . . .

(internal citations omitted). Given the important state interests at stake in the prison context, the Supreme Court has repeatedly stressed that prison policies are to be afforded great deference and that prison "practice[s] must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." Bell, 441 U.S. at 547.

Mr. Talbert did not submit CFCF's policy governing religious headgear with his motion for summary judgment. Therefore, I am unable to evaluate whether the

confiscation of Mr. Talbert's kufi fell within the confines of a valid prison policy serving legitimate penological objectives or whether the confiscation was a violation of Mr. Talbert's First Amendment rights. Accordingly, I decline to grant summary judgment for Mr. Talbert.

## IV. CONCLUSION

As demonstrated above, genuine issues of material fact remain regarding Mr. Talbert's § 1983 claim. Accordingly, I decline to grant summary judgment for Mr. Talbert.

An appropriate Order follows.